```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07.08.15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEXTER WASHINGTON,

                Petitioner,

-v-

JAMES WALSH,

                Respondent.

No. 10-cv-7288 (RJS) (JCF)
ORDER

RICHARD J. SULLIVAN, District Judge:

    Dexter Washington ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2 (the "Petition" or "Pet.")), challenging his conviction in New York Supreme Court, New York County, on two counts of burglary in the first degree, one count of robbery in the first degree, one count of robbery in the second degree, and one count of resisting arrest, for which he was sentenced as a predicate felon to twenty-five years of imprisonment. Now before the Court is the Report and Recommendation of the Honorable James C. Francis IV, Magistrate Judge, recommending that the Petition be denied. (Doc. No. 13 (the "Report" or "Rep.").) For the reasons set forth below, the Court adopts the Report in its entirety and denies the Petition.

I. LEGAL STANDARD

    A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly

established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 402 (2000)). An "'unreasonable application' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011)).

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). When a party makes specific objections to a magistrate judge's findings or legal conclusions, the court must undertake a de novo review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, "to the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will

review the Report strictly for clear error." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quoting *Chen v. Bd. of Immigration Appeals*, 435 F.3d 141, 145-46 (2d Cir. 2006)).

Courts are to read pro se filings liberally and interpret them "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). "Nonetheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato*, 662 F. Supp. 2d at 340 (quoting *Pinkney v. Progressive Home Health Servs.*, No. 06-cv-5023 (LTS), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

## II. DISCUSSION

The relevant facts and procedural history relating to the Petition are set forth in detail in the Report. Petitioner makes nine arguments, including that: (1) the evidence at trial was legally insufficient to support his conviction; (2) he did not have a "full and fair" probable cause hearing; (3) the prosecutor failed to disclose material evidence to him; (4) he was denied the right to represent himself pro se; (5) his pretrial and appellate counsel were ineffective; (6) the trial court should have conducted an independent source hearing prior to trial; (7) the prosecutor changed her theory of the case, thus denying him a fair and impartial trial; (8) the trial judge improperly interfered in the trial; and (9) he was improperly sentenced. (Rep. at 1.) Judge Francis thoroughly

addressed and rejected each of these arguments in the Report. Petitioner now objects to all but one of the Report's rejections – that the trial judge impermissibly interfered in his trial – and makes the additional objections that he is entitled to a default judgment and that the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013) entitles him to immediate release. The Court addresses each objection in turn.

### A. Insufficiency of the Evidence

Petitioner argues that the evidence at trial was insufficient to support the findings of guilt for first degree burglary because the victim, Ms. Sanchez, did not suffer a "physical injury." (Doc. No. 16 ("Obj.") at 6.) Petitioner also asserts that there was insufficient evidence to support his convictions for first and second degree robbery because the prosecution did not prove that Ms. Sanchez suffered a "serious physical injury." (*Id.*) However, just as in his Petition, Petitioner misstates the injury requirement for second degree robbery. (Pet. at 12-17.) Like first degree burglary, second degree robbery only requires that the victim suffer a "physical injury." N.Y. Penal Law §§ 140.30, 160.10. Moreover, while "serious physical injury" is an element of first degree robbery, a conviction may nonetheless stand where the prosecution has proven the use or threatened use of a "dangerous instrument," which is what it did here. N.Y. Penal Law §§ 160.15.

As for the sufficiency of the evidence introduced at trial, Judge Francis found that the injuries suffered by Ms. Sanchez – "redness, cuts, and swelling in the face, a black eye, pain in her jaw and face, and back pain requiring the ongoing use of a cane" – were more than sufficient to qualify as "physical injury" as required to prove first degree burglary or second degree robbery. (Rep. at 19.) The Report also found that the kitchen knife Petitioner used to threaten and intimidate Ms. Sanchez constituted a "dangerous instrument." (*Id.* at 21.) Petitioner objects to these findings on the grounds that witnesses gave inconsistent testimony about the extent of Ms. Sanchez's

injuries, that Ms. Sanchez's testimony was "self-serving," and that Ms. Sanchez's testimony was not conclusive. (Obj. at 5-9.) However, because Petitioner's objection "simply reiterates the original arguments" he made to Judge Francis, the Court reviews the Report's finding for clear error and finds none. *DiPilato*, 662 F. Supp. 2d at 339. Furthermore, under de novo review, the Court agrees with the Report's conclusion that there was sufficient evidence to establish that Ms. Sanchez suffered a "physical injury" and that Petitioner used a "dangerous instrument." Accordiingly, the Court adopts the Report's recommendation and rejects Petitioner's claim.

### B. Probable Cause Hearing

Petitioner next argues that he did not receive a "full and fair" opportunity to litigate his Fourth Amendment claims because of an "unconscionable breakdown" in the state court proceedings. (Rep. at 23-24 (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).) Specifically, he argues that (1) the money and jewelry found in his pocket were not suppressed despite inconsistent testimony from the arresting officer, Detective Yarbrough, (2) the prosecution was not penalized for failing to produce the notes and police recordings related to Detective Yarbrough's testimony prior to the hearing, (3) standby counsel and the prosecution infringed his efforts to represent himself, and (4) the prosecution was able to withdraw its request for an identification hearing on the ground that no "police arranged identification" occurred. (Rep. at 24-25.) Judge Francis found that Petitioner's allegations failed to rise to the level of dysfunction necessary to qualify as an "unconscionable breakdown," and in any event, the fact that Petitioner was able to raise these same objections on direct appeal demonstrates that there was no "unconscionable breakdown" in the state court proceedings. (Rep. at 25.)

Petitioner's objections to this aspect of the Report simply rehash the arguments he made in his Petition or are challenges to the outcome of the probable cause hearing, and therefore only

warrant clear error review. (Obj. at 11-17.) However, even after conducting a de novo review, the Court finds that Petitioner did receive a "full and fair" opportunity to litigate his Fourth Amendment claims and that Petitioner's right to represent himself was not infringed. As Judge Francis aptly stated, "the courts' failure to agree with the [P]etitioner does not equate to an 'unconscionable breakdown'" in the proceedings. (Rep. at 25.) Furthermore, Petitioner fully participated in the probable cause hearing by raising objections, conducting cross-examination, and raising his objections again on appeal, where they were considered and denied. Accordingly, the Court adopts the Report's findings with respect to Petitioner's Fourth Amendment claim.

### C. *Brady* Violations

Petitioner next asserts that the prosecution violated its "constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment," as established in *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over eight pieces of evidence, including: (1) the complete recording of police radio transmissions relied on by Detective Yarbrough, (2) the notes relating to Detective Yarbrough's testimony, (3) photographs of Ms. Sanchez's injuries, (4) other photographs introduced by the prosecutor at trial, (5) Ms. Sanchez's criminal record, (6) the "Chief Complaint" report of the responding Emergency Medical Technician ("EMT"), (7) proof of the prosecutor's agreement with a friend of the victim who was a fact witness, and (8) an arresting officer's notes. (Rep. at 27.) Judge Francis found that the prosecutor did not violate her *Brady* obligations with respect to any of these pieces of evidence. Petitioner's objections to the Report are the same arguments that he made to Judge Francis. Because the Court will not allow a party, even when pro se, to have "a second bite at the apple by simply relitigating a prior argument," the Report's conclusions are entitled to clear error review.

*DiPilato*, 662 F. Supp. 2d at 340. Finding none, the Court adopts them. Indeed, even under de novo review, the Court would adopt the Report's conclusions in full.

With respect to the complete recordings of police radio transmissions relied on by Detective Yarbrough, Judge Francis found that the evidence was not "material," such that *Brady* compelled its disclosure, because the identification evidence against Petitioner was so overwhelming that he could not show a "reasonable probability of a different result" had he received the complete recordings. (Rep. at 28-29 (citing *DiSimone v. Phillips*, 461 F.3d 181, 196 (2d Cir. 2006) (internal citations omitted)).) Petitioner persists in arguing that the recording was important and that there was not overwhelming evidence of his identification at the scene of the crime. (Obj. at 20-21.) Reviewing Petitioner's objection de novo, it is clear that there was overwhelming evidence to support his identification at the scene of the crime.

Petitioner next asserts that the prosecution violated its *Brady* obligations by failing to turn over the notes relating to Detective Yarbrough's testimony. Judge Francis found there was no *Brady* violation because Petitioner never specified how the notes were exculpatory or would be useful for impeachment. (Rep. at 29-30.) Furthermore, because there was overwhelming identification evidence, Judge Francis found that there was no prejudice from their being withheld. (*Id.*) Once again, Petitioner simply reiterates the argument made in the Petition – that the notes were important to the prosecution's case. (Obj. at 21-23.) However, as previously stated, the Court agrees with Judge Francis that there was overwhelming identification evidence introduced at trial. Moreover, Petitioner has failed to specify how the notes were exculpatory or would be useful for impeachment.

Petitioner further asserts that the prosecution's failure to turn over photographs of Ms. Sanchez's injuries breached its *Brady* obligations. Judge Francis found that the photos *were* in

fact produced to Petitioner before Ms. Sanchez testified, and further concluded that they were compelling evidence *against* Petitioner. (Rep. at 30.) Petitioner's objections (Obj. at 23-24) merely repeat the arguments made in his Petition, and the Court finds them just as unpersuasive as Judge Francis did. The trial record reflects that the prosecution provided the photos to Petitioner before Ms. Sanchez testified, and furthermore the photos were, if anything, supportive of the prosecution's case, not Petitioner's.

Petitioner next contends that the prosecution violated its *Brady* obligation by failing to produce other photographs introduced by the prosecution at trial. Judge Francis found that the photos were not exculpatory or useful for impeachment and that Petitioner failed to explain how he was prejudiced by their being withheld. (Rep. at 30-31.) Petitioner continues to assert that the photos were highly prejudicial because they bolstered the prosecution's case. (Obj. at 25.) The Court finds that the Report correctly rejected Petitioner's claims since Petitioner has not demonstrated how any of the photos qualified as *Brady* material.

With respect to the prosecution's failure to disclose Ms. Sanchez's criminal record, Judge Francis found there was no *Brady* violation because no criminal record existed for Ms. Sanchez. (Rep. at 31.) Petitioner maintains in his objections that the prosecution is lying about Ms. Sanchez's criminal record and that had the truth been handed over, he could have impeached Ms. Sanchez. (Obj. at 26.) However, Petitioner still has offered no evidence to support his argument and points to no facts or authority that Judge Francis overlooked. Accordingly, the Court finds that the Report appropriately rejected this claim.

Petitioner next asserts that the prosecution failed to produce a copy of the responding EMT's "Chief Complaint" report. Judge Francis found that Petitioner could not have been prejudiced by the alleged non-production because the information in the "Chief Complaint" report

8

was contained in a similar report that Petitioner did receive from the same EMT. (Rep. at 32-33.) Furthermore, the information in the report given to Petitioner corroborates Ms. Sanchez's testimony, and is therefore not favorable to Petitioner nor grounds for impeachment. (Rep. at 34.) In his objections, Petitioner merely reargues that the information in the EMT's "Chief Complaint" report was material, but does not contest the Report's findings that he timely received a nearly identical report from the same EMT or that the report corroborated Ms. Sanchez's testimony and therefore supported the prosecution's case. (Obj. at 27.) Accordingly, the Court agrees with Judge Francis that Petitioner has not established a *Brady* claim on the alleged non-production of the EMT's "Chief Complaint" report.

With respect to the prosecution's agreement to relocate a fact witness who was a friend of the victim's out of concern for the witness's safety, Judge Francis found the prosecution did not violate *Brady* because the trial transcript clearly shows that Petitioner was informed of the agreement during the witness's testimony. (Rep. at 34-35.) In objecting to the Report, Petitioner again reiterates the same failed arguments he made in his Petition. (Obj. at 27.) After reviewing the trial record, the Court concludes that Petitioner was informed of the prosecution's agreement with the witness and rejects Petitioner's claim.

Finally, Petitioner asserts that the prosecution failed to turn over an arresting officer's notes. Judge Francis found that the Petitioner could not make out a viable *Brady* claim because he failed to articulate how the notes were exculpatory or would have been useful for impeachment, or how he was prejudiced given the overwhelming identification evidence introduced at trial. (Rep. at 35-36.) Petitioner continues to argue conclusorily that the notes were important and that there were inconsistencies between the notes and witness testimony. (Obj. at 28.) Nevertheless, he offers no specifics, and instead merely rehashes arguments previously made to Judge Francis.

Furthermore, Petitioner patently fails to specify how this alleged non-production violated his *Brady* rights. Accordingly, as with all of Petitioner's alleged *Brady* claims, the Court adopts the Report's conclusions and denies the Petition.

### D. Right to Self-Representation

Petitioner next argues that his right to proceed pro se was violated because standby counsel, appointed by the trial court, constantly interfered with his representation. (Pet. at 64-67.) Alternatively, Petitioner argues that the trial court forced him to represent himself. (*Id.*) Judge Francis concluded that Petitioner's standby counsel did not so interfere with his representation as to constitute a constitutional violation. He found that both times standby counsel tried to interrupt Petitioner during the trial, the jury was not present and the trial judge stopped standby counsel immediately. (Rep. at 39.) Judge Francis concluded that this conduct did not infringe on Petitioner's right to self-representation because it did not interfere with his ability to try the case the way he wanted or prejudice the jury's view of him. (*Id.*) The Report also found that the trial court did not force Petitioner to represent himself pro se. In fact, the record reflects that after Petitioner complained about his appointed counsel, the trial court asked if Petitioner wanted a new lawyer or to represent himself, and that Petitioner insisted on proceeding pro se. (Rep. at 38.) The trial court questioned Petitioner extensively to ensure that he understood what he was doing and was capable of representing himself, warned him repeatedly of the consequences, and eventually permitted him to proceed, albeit with standby counsel. (Rep. at 38.) Therefore, Judge Francis determined that Petitioner was not forced to proceed pro se against his will.

Petitioner's objections simply restate the unavailing arguments made in the Petition. Having reviewed the record, the Court agrees with Judge Francis, whether under clear error or de novo review, and rejects Petitioner's claim.

E. Ineffective Assistance of Counsel

In his Petition, Petitioner raised ineffective assistance of counsel claims for both his trial and appellate counsel. With respect to his trial counsel, he contends that his lawyer failed to (1) object to the indictment, (2) secure Petitioner's testimony before the grand jury, and (3) communicate with him for a period of time prior to trial. (Pet. at 70-72, 77-79.) With respect to his appellate counsel, he contends that his lawyer failed to raise numerous meritorious arguments on appeal. (Pet. at 81-89.) The Report rejected these arguments on the grounds that they failed to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

Specifically, Judge Francis found that while Petitioner's appointed counsel may not have moved to dismiss his indictment, Petitioner himself did. Therefore, Judge Francis concluded there could be no ineffective assistance of counsel because there is no "reasonable probability" that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Judge Francis also rejected Petitioner's claim regarding his lawyer's failure to secure his testimony before the grand jury, noting that Petitioner did not articulate why the presentation he asserts he would have given to the grand jury would have been more convincing than that which he gave to the trial jury, particularly in light of the lower burden of proof for the prosecution at that stage. (Rep. at 44.) Therefore, Judge Francis concluded that Petitioner failed to demonstrate that "there is a reasonable probability" that "the result of the proceeding would have been different" but for counsel's alleged errors. *Strickland*, 466 U.S. at 694. Similarly, Judge Francis found that while the appointed trial counsel may not have communicated with Petitioner for some period of time between the

indictment and the suppression hearing, Petitioner still managed to file several pro se motions during that time, which challenged the validity of his indictment and the representation he was receiving from trial counsel. Once again, Judge Francis determined that Petitioner had failed to demonstrate how more regular contact with his counsel pretrial would have resulted in a different outcome. (Rep. at 45-46.) Finally, Judge Francis determined that Petitioner's appellate counsel was not ineffective, since his representation did not fall "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and in any event, the arguments he would have made – namely, that the prosecution violated Petitioner's *Brady* rights in myriad ways, that the trial evidence was insufficient to support his convictions, and that the prosecution withheld evidence of Ms. Sanchez's criminal record – were meritless, and thus raised no "reasonable probability" that "the result of the proceeding would have been different" but for counsel's alleged errors, *id.* at 694. (Rep. at 48.)

In objecting to the Report, Petitioner continues to argue that his appointed trial counsel was ineffective because he failed to secure his appearance at the grand jury proceeding, failed to challenge his indictment, and failed to file motions on his behalf. (Obj. at 31-34.) Petitioner also persists in arguing that his appellate counsel was ineffective because he "flat-out refused to raise many meritorious claims," although Petitioner fails to identify what exactly any of those waived claims were. (Obj. at 36.) The arguments raised by Petitioner in his objections are thus identical to those he made in his Petition. Under both clear error and de novo review, the Court concludes that Petitioner has failed to satisfy either prong of the *Strickland* standard, and that the Report correctly rejected Petitioner's ineffective assistance claims.

F. Independent Source Hearing

Petitioner next contends that his due process rights were denied because he did not receive a full and fair independent source hearing for in-court identifications made during the suppression hearing and at trial. (Pet. at 92-96 citing *United States v. Wade*, 388 U.S. 218 (1967).) Despite the fact that the Petition asserted *Wade* as the basis for this claim, Judge Francis concluded that Petitioner meant to challenge the trial court's decision to permit various witnesses for the prosecution to identify him as the perpetrator without giving him notice of the bases for those identifications. (Rep. at 49 n.4.) Because the law that gives Petitioner the right to obtain such notice is N.Y. Crim. Proc. Law § 710.30, the Report rejected Petitioner's claim as not being cognizable on federal habeas review. (Rep. at 50.)

Petitioner objects that he did not argue in his Petition that the prosecution violated N.Y. Crim. Proc. Law § 710.30, but rather asserted that the prosecution denied him a "full and fair" *Wade* hearing. (Obj. at 38.) Petitioner was not entitled to a *Wade* hearing, however, because as Judge Francis concluded, there is no evidence that any police-arranged identifications were introduced – directly or indirectly – at trial. (Rep. at 50.) Petitioner maintains that two witnesses were shown photo arrays, but he has presented no evidence to support such a contention. The trial testimony that he cites in favor of his argument merely establishes that these two witnesses made statements to a detective at the police station – not that either witness saw a photo array or that any other police-arranged identification procedure took place with those witnesses. Accordingly, the Court concludes that Petitioner has failed to demonstrate the need for a *Wade* hearing, and that the trial court therefore made no error in denying him such a hearing.

G. Theory of the Case

Petitioner next asserts that the prosecution changed the theory of the case during trial, thereby depriving him of fair notice of the charges against him. (Pet. at 96-99.) Judge Francis rejected this claim because the "core" of the prosecution's case remained the same from indictment to conviction. The prosecution's theory was always that Petitioner posed as a delivery person to trick Ms. Sanchez into granting him access to her apartment, that once she opened the door he assaulted her, and that once she was immobilized he proceeded to take her jewelry and money. (Rep. at 52.) While the details of the prosecution's case changed slightly over time – for example, whether Petitioner posed as a delivery man or a Federal Express worker, and whether Petitioner was working with co-conspirators or working alone to trick Ms. Sanchez into granting him access to her apartment – the change in emphasis did not undermine Petitioner's ability to mount a defense to the main thrust of the charges against him, namely, that Petitioner illegally gained entry to Ms. Sanchez's apartment and while inside assaulted her and robbed her. (Rep. at 53.) *See United States v. Kelly*, Fed. App'x 194, 197 (2d Cir. 2010) (holding that the prosecution has "significant flexibility" in how it presents its case).

Because Petitioner merely objects to the Report's finding on the same grounds that he raised in his Petition (Obj. at 40-42), without any elaboration or specificity, the Report's conclusion is entitled to clear error review. However, no matter the standard of review, the Court agrees with Judge Francis that Petitioner has failed to demonstrate that the prosecution's theory of the case changed so much over time that Petitioner was unable to mount a defense to the charges against him. Accordingly, the Court adopts the Report's rejection of Petitioner's claim.

H. Sentencing

Petitioner next argues that he was deprived of due process because his sentence was based on false, misleading, and incomplete information. (Pet. at 107-08.) Specifically, Petitioner challenges the fact that the trial judge adjudicated him a "second violent felony offender," which significantly increased his sentence. (*Id.*) The Report rejected this argument, finding that the prosecution put forth evidence of his prior conviction and incarceration, and that Petitioner did not contest that he was previously convicted of a violent felony or that he was in fact incarcerated during the periods alleged by the prosecution. (Rep. at 56.)

Petitioner's objection merely reiterates his contention that information in the sentencing report was misleading or false because it included inconsistent testimony and was incomplete. (Obj. at 44-49.) Specifically, Petitioner asserts that the prosecution's predicate felony statement incorrectly stated that Petitioner was housed at the Elmira Correctional Facility from 1992 to 1996, when in fact he was housed at Wende Correctional Facility at that time (Obj. at 45), and that the presentence report overstated the extent of Ms. Sanchez's injuries (Obj. at 48). But Petitioner still does not contest the fact that he has a prior conviction, that he was previously incarcerated for that conviction, or that such a conviction qualified him to be sentenced as a "second violent felony offender." Therefore, the Court adopts the Report's rejection of this claim under both clear error and de novo review, since the alleged inaccuracies in the sentencing report have no bearing on the trial court judge's finding that Petitioner was a "second violent felony offender."

I. Default Judgment

Petitioner now contends for the first time that Judge Francis lacked jurisdiction to accept Respondent's opposition to the petition because it was filed after the deadline that Judge Francis initially imposed on Respondent. (Obj. at 2.) The law is clear that Judge Francis has the "inherent

power and responsibility to manage [his] docket so as to achieve the orderly and expeditious disposition of cases." *In re World Trade Center Disaster Site Litigation*, 722 F.3d 483, 487 (2d Cir. 2013) (citation omitted). This power includes the ability to grant parties extensions when appropriate, which is exactly what Judge Francis did here (Doc. No. 7), and Petitioner has offered nothing to suggest that Judge Francis abused that power. Thus, the Court rejects this objection.

### J. *Alleyne v. United States*

After Petitioner filed his objections to the Report, Petitioner filed a supplemental motion in support of his petition. In it, Petitioner argues that the Supreme Court's recent decision in *Alleyne v. United States* entitles him to "immediate release" because the jury did not find beyond a reasonable doubt that the crimes he was charged with were "violent" ones. (Doc. No. 23.) According to Petitioner, the lack of such a finding by the jury precluded the trial judge from sentencing him as a "second violent felony offender." (*Id.*)

Without even addressing the timeliness of Petitioner's post-objection filing, the Court rejects Petitioner's argument because *Alleyne* is inapplicable to his case. The Supreme Court in *Alleyne* held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). However, *Alleyne* did not disturb the well-established principle, articulated by the Supreme Court in *Apprendi v. New Jersey*, that this rule does *not* apply to *prior* convictions. 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.") (emphasis added). As the Sixth Circuit recently noted, "*Alleyne* does not stand for the proposition that a defendant's prior conviction must be submitted to a jury and proven beyond a reasonable doubt, even when the fact of those convictions increases the mandatory minimum sentence for a crime." *United*

*States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014); *see also United States v. Mejia*, 545 F.3d 179, 207 (2d Cir. 2008).

Here, Petitioner was sentenced as a "second violent felony offender" pursuant to N.Y. Penal Law § 70.04 – which requires only that the trial court find that (1) the count of conviction is a violent felony offense (as that term is defined by law), and (2) the defendant has been previously convicted of a violent felony offense. As such, the statute falls squarely within the exception in *Apprendi* involving prior convictions. *Nunez v. Conway*, 923 F. Supp. 2d 557, 569 (S.D.N.Y. 2013). As noted above, nothing in *Alleyne* alters this exception, and therefore, *Alleyne* does not support Petitioner's argument that he could not be sentenced as a "second violent felony offender" – a recidivism-based sentencing enhancement – without a jury finding on the "violent" nature of the charged offense. Accordingly, the Court denies Petitioner's supplemental objection.

### III. CONCLUSION

For the reasons set forth above, the Court hereby adopts the Report in its entirety and DENIES the Petition. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:   July 8, 2015
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE